Okay, the next argued case is number 19-1676, Harris against the Securities and Exchange Commission. Mr. Branch, when you're ready. Yes. Good morning. May it please the Court. The issue in this petition is the termination of a supervisory security specialist, a COOP branch manager at the Securities and Exchange Commission. And the issue is whether there's substantial evidence in the record to support the decision. It's a felon's position that the decision lacks substantial evidence, primarily because the administrative judge did not consider evidence which contradicted statements from the agency. Witnesses were credible, but he did not consider evidence which contradicted that evidence. How do we know he didn't consider it? Was it in the record? It was in the record, but he did not note it in his opinion. But he was not required to do that. He was not required to do that, but the fact that some of this evidence contradicted what contradicted his own findings suggests that he did not adequately consider and assess this evidence. And the Court has decided... Can you give me a specific example? I mean, the fact that he didn't specifically explain why he found that other evidence not credible and the agency's witnesses credible doesn't seem to suggest that he didn't consider it. So, Your Honor, it starts with the appellant's performance appraisals. She started in 2014. From 2014 until 2017, she had satisfactory or exceeded expectations performance appraisals. There's a reference to that in 2017, the year that she was placed on the PIP and later proposed for termination. For nine months during this rating cycle, her performance was acceptable. She received a mid-year review. It was only the last three months when she got a new supervisor that there was an assertion that her performance was not acceptable. Another example is the... How is that inconsistent with the fact that her performance during her PIP was unacceptable? Your Honor, it's inconsistent... This is what happens all the time in these government performance cases, that people get rated acceptable for a while and then their duties change. Maybe they get promoted to do something they're not capable of and they get put on a PIP and they can't do it. The fact that there's prior acceptable performance ratings is certainly relevant, but it doesn't contradict a finding that later performance is unacceptable, does it? Your Honor, so she did not get a new position or get additional duties. She was still performing the same duties. So nine months out of this nine months, because part of it was a short period of time when she was reassigned. But even when she was reassigned during this performance cycle, her performance was acceptable. But nine months into this performance cycle, her duties have not changed substantially and they don't change substantially in the last three months. But a decision was made after assessing her, reviewing her for the last three months that she would be placed on a PIP. So it's slightly different from someone receiving a favorable evaluation for many years and then... Well, it still doesn't matter if they found that she was not doing her job acceptably. The fact that they previously found her doesn't stop them from changing their minds. As long as they tell her, here are your job duties, here are what we expect of you, and here's the opportunity to perform. Why aren't we focusing on what she did during this PIP and why it didn't meet expectations? Your Honor, that's part of the... Of course, that's part of the calculation. And I was going to go to the next point, which was the October 2017 review. There was a calibration session and Mr. Girod, the gentleman in the record, recorded notes during the calibration session. One of the reasons why a decision was made to terminate her was this claim that somehow she did not go or agree with, go along or agree with this consensus that one of her subordinate employees was not performing, Mr. Holland. And the record establishes that his notes, Mr. Girod's notes actually contradict this, or at least they're inconsistent. First, the notes indicate that the session started with a comment by Ms. Harris that Mr. Holland and another employee were performing, they were doing their job, they were performing well. During this rating period, Mr. Holland had received a performance bonus or performance award from another supervisor. And at the end of his notes, he indicates that as of now, this is where we are. There was no consensus that this gentleman should receive a failing or unacceptable performance rating. So this case is just the things... Based upon his notes, right? Yeah, based on... But there was testimony from other people that there was a different conclusion reach, wasn't there? Well, Your Honor, it's the testimony... Well, you're asking us to privilege his notes over other testimony, which is certainly something you can argue to the administrative judge, the fact finder, but we don't get to re-weigh those facts. We get to re-weigh whether the administrative judge made a factual finding that's supported by evidence, even if it's contradicted by other evidence. Is that the case? Well, Your Honor, I think the court's obligation is to consider the entire record. And the court's decisions... So if there's two pieces of evidence in the record, and one says one thing, one says the other thing, the administrative judge went with the one thing, we can't go with the other thing just because you want us to, can we? Well, no, you can't, Your Honor. I'm not suggesting that. What I'm suggesting is this court has indicated and the MSPB has indicated that it's the obligation to consider the individual's performance both before, during, and after the PIP. Those are relevant considerations. And for Ms. Harris here in particular, before the PIP, there were no issues. She's exceeding her performance. What we have is isolated incidents while she was on the PIP, and a lot of that is contradicted. I mean, there were four reasons that they gave for terminating her, and these are just the thinnest of reasons imaginable. And the administrative judge did not consider, well, I won't say he did not consider, but his decision does not reflect the evidence that was presented. She was terminated for her work on this coop resource project. There was an allegation that there was an executive summary that was not clear. This same or a similar version of this executive summary was presented to the supervisor prior to the time that she was placed on the PIP. There was no issue with it, but suddenly when she was on the PIP, at least the administrative judge found that there was an issue with the executive summary. There's this issue of a mathematical calculation. Ms. Harris was not experienced in Excel. Her supervisor required her to use Excel to do this calculation. There was an error in the calculation. I mean, that's how thin this case is that led to the termination of Ms. Harris. I just referenced briefly the October 23, 2017 calibration session where there was an allegation that she did not go along with the consensus of one of her subordinate employees. As a result of this session, this calibration session, there was a statement made that there was some concern that the judge had a temper and that there was going to be some investigation. There was a gentleman named Dave Brown who was brought in to talk to Ms. Harris to do an investigation. During the course of this interview, Ms. Harris indicated that she had notes, but she could not locate her notes. As a result of Ms. Harris not being able to locate her notes as a part of this interview process, that's one of the basis for terminating her. And the final issue was the performance reviews. There was an issue of a delay in the performance reviews. There was evidence in the record that Ms. Harris and Ms. Clancy, a coworker, were to be co-planners with the performance review. And there was an issue with the agency's system that was performing this function for the co-planners. It did not function as it should, and there was a delay in doing this. This was presented in evidence, and the administrative judge concluded that regardless of statements that were either inconsistent or contradicted, some of the reasons prepared by the agency or noted by the agency in the termination, that the termination would go forward. This PIP, as we indicated, and it was clear in the record, the PIP was, the decision to terminate was already made when she was placed on the PIP. We know that because the agency's Office of General Counsel was actually responsible for preparing the PIP, and it was issued through the supervisor, but it basically came through the Office of General Counsel. I don't understand why that means it's predetermined. Lots of government agencies, when they put people on PIPs, want to make sure they're doing it in a legally correct way because Chapter 43 has some pretty strict requirements. So why does the fact that they got OGC to bless it mean that it was predetermined? OGC wasn't the final decision maker on the PIP, were they? Well, OGC was advising the manager. That's what OGCs do. I know, but they were involved in every step of the process. First, placing her on the PIP. We have, I know, 15 factors or so, and she can't make more than two mistakes on any of these factors. This PIP was vague, and it was basically unattainable by any, basically, any federal employee. This was designed from the beginning for her to fail the PIP. Your Honor, I'll just reserve the remaining minutes if there aren't any other questions. Okay, thank you. You have rebuttal time. Ms. Vanden? May it please the Court, on behalf of the SEC, we ask that this Court either dismiss this case as a mixed case, having determined that the waiver, the purported waiver, is ineffective, or I'm not sure why that waiver isn't effective. I mean, she made a bunch of these arguments that she's now making in support of a discrimination claim, but they also seem to go towards non-discrimination defenses, too. So, the fact that she made them as part of a discrimination claim that she's now waived doesn't seem like it would prohibit her from saying, well, this was predetermined, not for discriminatory reasons, but just for non-discriminatory reasons. Why isn't that correct? Right. So, in a case on different facts, that might be the case. Here, the facts are so unique that I don't think it works out that way. She continues to maintain a DC District Court litigation challenging this performance, particularly the PIP. But it's not a challenge to her removal. Well, it does, through the progression of the allegations, argue that the discrimination culminated in the proposed termination and the termination, and in the relief requested from the District Court, she asked for reinstatement. Also, whether it's specifically pled in the District Court or not, in order for the United States to defend itself in that action, right, she's asked to be reinstated. All of the conduct and the performance leading up to that issue. So, we submit that it is before the District Court. Now, she could waive all of those claims in the Federal Circuit, and that waiver would be binding in the District Court, but as we presently stand... Well, isn't that up to the District Court to determine what the effect of her waiver of discrimination claims here is with regard to what the District Court can hear? Yes. Because, I mean, the District Court can certainly hear discrimination claims arising out of the same set of facts if she's pursuing damages, for instance, or something like that, right? Yes, but not simultaneously, right? She's pursuing on alternate theories. Right, but she has affirmatively waived any discrimination challenges to her removal in the course of the action of this case. And so, if we accept that, then what happens in the District Court seems like it should be for the District Court to decide the effect of that waiver here, not for us to tell the District Court to dismiss that case, or for us not to hear a case where she's made a seemingly complete waiver. Right. You're correct that the District Court would decide what the effect of this Court's waiver is, and there is binding authority in the D.C. Circuit that the waiver here is binding on the D.C. action, but to the extent this Court were to hold her to her waiver here, leaving the District Court aside... Well, she's asked us to hold her to her waiver. Yes, but on the facts of this case, and given the arguments raised in the brief, while she has filed a formal waiver of her discrimination claims, the arguments that she presses continue to sound in discrimination and pretext and retaliation. Before the Board... This is a case that winds its way here from the Administrative Judge at the Board. Before the Board, her only... Other than challenging just the substantial evidence, her only allegations, her only affirmative defenses were that there was racial discrimination and retaliation. This Court now hears a narrower piece of what was below the Board below. There were no  jurors. Mr. Giraud, who was her supervisor at one point, sort of had a conflict of interest based on the earlier EEOC complaint, and that he should have basically recused. This is a violation of her due process rights, or so she's arguing. Or so she's arguing. So in substance... It's not... I mean, there's an overlap there, but it sounds a little different than an argument based on discrimination. Well, it's a retaliation argument, right? Mr. Giraud was the focus of her EEOC complaint. Not necessarily. It's just an argument that he shouldn't have been involved in the decision making because it was a prior incident, and he should have recused himself. Okay. So assuming, are you under... There's something left, right, that's not retaliation, that there is a residual due process claim. Yeah. To the extent she similarly made that argument before the Board, the administrative judge pressed her as to whether she was in fact raising a due process argument or a retaliation argument, and she affirmatively waived the due process argument before the Board and proceeded solely on the retaliation theory. So even if... Well, so to the extent she's raising that now, where she's affirmatively waived it, then wouldn't your argument just be that she's waived that new argument? Not that it's a case that she's not making. Right. That is an argument that we've made. We have several arguments. I understand. Do you want to turn to the substantial evidence question briefly? Yes, absolutely. So the governing standard for this court's review of anything within its jurisdiction is whether or not on these facts, the termination was supported by substantial evidence. That's a high bar, and we would submit that on this record, the factual evidence is overwhelmingly in support of substantial evidence. Ms. Harris was found to have had interpersonal issues and issues with work product. She was placed on a PIP. The PIP was 90 days. Various courts to have considered the PIP and the duration of a PIP have recognized that PIPs as short as 30 days are sufficient. So I don't think we have a timeliness problem here. In order for the warning of her inadequacies and an opportunity to improve them. The PIP was that warning, and her opportunity to improve came through those 90 days where she had weekly meetings with her supervisor. Her supervisor was also available for ad hoc meetings. She was given extensions for work product. She was given opportunities to improve or redo work product that was due in that period. I don't want to get too far away from sort of the over contextualized or the larger context of this case. Ms. Harris was a branch chief. She was in charge of and responsible for continuity of operations coupe for the SEC. This was her section, her division. At the start of the PIP, she made a complaint to her supervisor that her section was understaffed. Her supervisor then said, okay, prepare for me a resource analysis report. What projects does coupe work on? How many hours does those projects require? What staff do you have to complete them, right? And then we'll assess what your staffing levels are and whether more staff is needed. Throughout the next month, she either failed or refused to produce a workable report. That report was called for in response to her own complaint that her section was understaffed. She was given numerous opportunities to put that information to her supervisor and she just couldn't do it. Eventually, the spreadsheet that she compiled contained missing information, mathematical errors, and her supervisor relieved her of the obligation of finalizing it. She was then tasked instead to produce an executive report. As the administrative judge goes into great detail on, he found that executive summary, which is in the record, to be on its face unprofessional. It had fonts of various sizes. Three quarters of it is concerned not with providing recommendations on current and future staffing levels, but on grievances about having had to produce this report in the first instance. Further to that, she also was suffered inadequacies in terms of performance evaluations for her own subordinate employees. There was a consensus meeting amongst supervisors, a calibration meeting as my opposing counsel calls it. There was a consensus reached for a rating to give to Mr. Holland, a subordinate. She then deviated from that rating and gave him a higher one. She also complained at the meeting that she did not want to convey the lower rating to Mr. Holland. In response to that management, again stepped up and said, well, let's see how we can help you. Mr. Brown, another employee, was tasked with doing an investigation to see whether there was an issue with Mr. Holland to substantiate Ms. Harris's complaints. She then frustrated his investigation. So what we have here is someone who's responsible for a branch who can't show up to meetings to talk about her branch's core responsibilities. She can't produce a report summarizing its projects and its resources and what's needed now and in the future. She has interpersonal issues with her supervisor and other staff. And for those reasons, she was ultimately terminated. We would submit that, to the extent this court takes jurisdiction to hear this matter, arguments such as the due process claim or other arguments sounding in pretext or predetermination are waived and she should be held to waiver on those arguments. Assume they're not waived. Do you want to comment on them? Sure. So with respect to the due process argument, as I mentioned, in substance is a retaliation argument. To the extent one were to construe it as a due process argument, it's not developed and so it would be waived on that reason as well. She doesn't cite any authority for any due process principles and there is no law that we're aware of that says that this deciding official couldn't be the deciding official for her termination. He was her second-line supervisor. Instead, as this court's Loveschin decision makes clear, the governing standard is substantial evidence, right? It doesn't look specifically to who made what decisions. It looks at the entirety of the record and as we submit the termination decision was supported by substantial evidence. With regards to any claims of pretext or predetermination that are somehow separate from discrimination or retaliation, we don't think there's anything there. Nothing was the same as with the due process argument. No alternative theories were developed before the board and would not be preserved for this court to rule on now. There was no debate before the board, say, that one supervisor was putting her on a PIP and terminating her in order to favor another employee, right? That would be a kind of pretext or predetermination that might not be discrimination-based. None of that was before the board. None of those arguments have been developed or preserved. We would also put forth that anything that concerns the pre-PIP performance, my colleague had mentioned some of that earlier, her performance from October 2014 to the point of the PIP, all of that is waived and should not be simultaneously considered by this court because that is indisputably squarely in front of the district court right now. The only thing that could theoretically be remaining is just whether or not her termination was supported by the substantial evidence and as we have submitted, we believe that the record adequately supports that. If the panel has no further questions. Thank you. Mr. Branch? Yes, Your Honor. Just once again, our position is that the administrative judge did not consider or assess all of the evidence in the record, particularly the evidence that either contradicted the reasons offered by the agency or supported the appellant's position. A glaring example of that is in the opening page, maybe the first or second page, without making any comment about Ms. Harris's prior performance or her performance evaluations, there's a reference to the fact that some employee made an accusation that Ms. Harris, an African-American female, stood up in a meeting, a large meeting with her subordinate employees and stated that her supervisor, a Caucasian female, was a bitch. And the administrative judge made a point of putting that in the record and then he notes in a footnote that the finding on this allegation was inconclusive. Not directing any attention to her prior evaluations or her in the record. Now, concerning whether there was substantial evidence to support the action taken against Ms. Harris, this starts with a PIP. There's no evidence of any performance issues before the PIP. She gets notice of these alleged performance issues when she gets this PIP on October 2, 2017, and she's placed on a 90-day PIP. The evidence in the record does not support this, I don't want to say exaggerated, but it seems to be, there seems to be more argument here than there was in the record about Ms. Harris allegedly missing meetings and not being able to produce a work product or the supervisor making herself available on a weekly basis for meetings or an ad hoc basis. I don't think I've seen... Is there any rule or regulation that imposes an issue before a PIP is issued? Your Honor, we cited the authority in our brief of cases being considered by the board where the employee... I mean, doesn't the PIP itself inform her of the issues that she confronts? The PIP informs her, there's no warning before the PIP. If there was a genuine concern that an employee had performance issues, you would expect to see in the record and some evidence that there was some warning or some indication before the time you're placed on the PIP. This is after the end of her evaluation period. After 2017, she goes through nine months, no issue. She goes through the remaining three months, no issue. After that period, that's when she's informed. We have concerns about your performance, you're being placed on a PIP, you have 90 days to improve your performance, and you're out of here in 90 days. Is there a rule that requires that a warning be given? No rules that a warning be given, but case authority suggests that the MSPB should look at both the performance of the employee before the PIP, during the PIP, and after the PIP as well. I mentioned also that there was no reasonable opportunity for this employee to improve. There was some discussion about this COOP resource project. The fact of the matter is that Ms. Harris was given this project, and at the same time, this project was previously assigned to a contractor, and the contractor took 2,400 hours and billed the SEC for 24 hours to work on this project. Ms. Harris was given two weeks to complete the project. At the time she was given this time to complete the project, one, her administrative assistant was removed from her, and a staff member had been detailed out of her jurisdiction, out of her authority. All of this is in the record. So there was no effort, there was never any intent for Ms. Harris to succeed while on this PIP. This project was an example of it, of a supervisor saying, I'm going to place you on a project where I can make a subjective determination as to whether you meet the requirements of this project, and if I determine solely that you don't meet these requirements, you're going to be removed. That's what happened. She was terminated after 90 days, immediately after the conclusion of this PIP. It was already decided before she was placed on the PIP. Thank you. Thank you. Thank you both. The case is taken under submission, and that concludes our argued cases for today. All rise.